FILED
U.S. DISTRICT COURT E.D.N.Y.

★ OCT 12 2012 ★

LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
DEJANA INDUSTRIES, INC.,

           Plaintiff,

- against -

THE VILLAGE OF MANORHAVEN and
GIOVANNA GIUNTA, Individually and in
her official capacity as Mayor of the
Village of Manorhaven,

           Defendant.
-----------------------------------------------------------X

CV 12 COMPLAINT 5140

Civil Action No.

**JURY TRIAL DEMANDED**



SEYBERT, J
BOYLE, M

Plaintiff, DEJANA INDUSTRIES, INC., by its attorneys, RYAN, BRENNAN &
DONNELLY LLP, as and for its complaint against defendants, respectfully sets forth the
following:

## INTRODUCTION

1.     This is a civil action seeking monetary relief, compensatory and punitive
damages, disbursements, costs and attorneys' fees for violations of plaintiff's
constitutional and statutory civil rights pursuant to 42 U.S.C.§ 1983 and for breach of
contract.

2.     Specifically, plaintiff alleges that defendants breached and wrongfully
terminated, without just cause, an Agreement pursuant to which plaintiff was to continue
to provide services to defendant until May 31, 2015.

3.     Plaintiff further alleges that the breach and wrongful termination of said
Agreement was done in response to and retaliation for the political beliefs and
associations of plaintiff.

4.      That, in breaching and wrongfully terminating the said Agreement, defendants did violate plaintiff's rights to free political association.

## JURISDICTION AND VENUE

5.      The jurisdiction of this Court is invoked under 28 U.S.C. §§ 1331 and 1343. This Court has supplemental jurisdiction of plaintiff's contract claims pursuant to 28 U.S.C. § 1367.

6.      Venue in the Eastern District of New York is appropriate pursuant to 28 U.S.C. § 1391 insomuch as all parties reside within the district and the acts giving rise to plaintiff's claims occurred within the district.

## PARTIES

7.      Plaintiff DEJANA INDUSTRIES, INC. ("DEJANA") is a domestic corporation formed under and existing by virtue of the laws of the State of New York.

8.      Plaintiff DEJANA maintains its principal place of business at 30 Sagamore Hill Drive, Port Washington, New York 11050.

9.      Plaintiff DEJANA's principal business involves the provision of street sweeping, catch basin cleaning, snow removal, solid waste removal, litter collection services and other miscellaneous services for municipal and commercial customers.

10.      Defendant VILLAGE OF MANORHAVEN ("VILLAGE") is a municipal corporation existing under and by virtue of the laws of the State of New York.

11.      Defendant VILLAGE is situated in the County of Nassau and maintains its Village Hall at 33 Manorhaven Boulevard, Port Washington, New York 11050.

12.      Defendant GIOVANNA GIUNTA is the mayor of the defendant VILLAGE. She is named herein both in her official and individual capacities.

2

## FIRST CLAIM FOR RELIEF
### (42 U.S.C. § 1983)

13.     On or about April 1, 2010, plaintiff DEJANA and defendant VILLAGE entered into an Agreement pursuant to which DEJANA was to provide cleaning and maintenance services for the sanitary sewer system within the VILLAGE.  A copy of this Agreement is annexed hereto as Exhibit "A."

14.     By resolution of the defendant VILLAGE's Board of Trustees, the duration of the Agreement was February 1, 2010 through May 31, 2015.

15.     At all times, plaintiff DEJANA fulfilled its obligations pursuant to the Agreement and acted in accordance therewith.

16.     On July 27, 2012, the defendant VILLAGE unilaterally and unlawfully terminated said Agreement.   Specifically, in a letter, dated July 27, 2012, VILLAGE Attorney Charles J. Casolaro advised DEJANA

> … to immediately cease all chemical treatments and jetting of the lines to the Village's sewers. The Village Board of Trustees has decided to terminate that service using outside contractors.

17.     Prior to July 27, 2012, plaintiff DEJANA had received no indication that the VILLAGE was terminating such services or had any intention of not fulfilling its obligations under the Agreement.   Nor had DEJANA been advised at any time of any dissatisfaction with the services being provided pursuant to the Agreement.

3

18.     The decision to unilaterally and wrongfully terminate the Agreement was motivated by and done solely in response to DEJANA's political beliefs and associations.

19.     DEJANA's principals were known to have been supporters of the political opponents of the current VILLAGE Board of Trustees, including defendant GIOVANNA GIUNTA.

20.     On July 26, 2012, the current VILLAGE Board of Trustees held its first regular business meeting since taking office.  The following day, the VILLAGE attorney advised DEJANA of the termination of the Agreement.  Upon information and belief this termination was done at the behest of defendant GIOVANNA GIUNTA in response to plaintiff's support of her political opponent.

21.     The defendants' unilateral termination of the Agreement constituted a violation of DEJANA's rights to free political association.

22.     As a result of the violation of its rights, DEJANA has and will continue to suffer damages, both from the lost revenues anticipated under the Agreement and as a result of lost business due to the damage caused to its reputation by the defendants' action.

23.     DEJANA is entitled to recover damages, both compensatory and punitive, from the defendants VILLAGE and GIOVANNA GIUNTA in an amount currently unknown but believed to be in excess of $1,000,000.00, together with interest, costs, disbursements and attorneys' fees.

4

## SECOND CLAIM FOR RELIEF
### Breach of Contract

24.     Plaintiff DEJANA repeats and reiterates each and every allegation set forth above in paragraphs "1" through and including "23" as if set forth here at length.

25.     By unilaterally terminating the Agreement, the defendant VILLAGE knowingly and purposefully breached same.

26.     As a result of defendant VILLAGE's breach, plaintiff DEJANA has sustained damages in the form of lost revenue anticipated under the Agreement.

27.     DEJANA is entitled to recover damages, both compensatory and punitive, from the defendant VILLAGE in an amount believed to be in excess of $250,000.00, together with interest, costs and disbursements.

**WHEREFORE,** plaintiff demands judgment over and against defendants as follows:

> 1.     on its **FIRST CLAIM FOR RELIEF**, damages in an amount currently unknown but believed to be in excess of $1,000,000.00, together with interest, costs, disbursements, attorneys' fees and punitive damages;

> 2.     on its **SECOND CLAIM FOR RELIEF**, damages in an amount currently unknown but believed to be in excess of $250,000.00, together with interest, costs and disbursements; and

3.    such other and further relief as this Court may

deem proper.

Dated:  Floral Park, New York
          October 3,  2012

Yours, etc.,

RYAN, BRENNAN & DONNELLY LLP

By: _____

John E. Ryan (JR 3905)
Attorneys for Plaintiff
131 Tulip Avenue
Floral Park, NY  11001
(516) 328-1100

6

**Exhibit A**

**FINAL CONTRACT**

**THIS AGREEMENT**, made as of the _____ day of _April_, 2010, by and between the **INCORPORATED VILLAGE OF MANORHAVEN**, in the Town of North Hempstead, Nassau County, New York, hereinafter referred to as the "Village" and **DEJANA INDUSTRIES, Inc.**, a New York Corporation having its principal place of business at 30 Sagamore Hill Drive, Port Washington, New York, hereinafter referred to as the "Contractor".

## WITNESSETH:

In consideration of the Agreement on the part of the parties hereto, they do hereby mutually agree as follows:

1. **Cleaning and Maintenance**

   a. The Contractor shall furnish all the necessary material, equipment and labor required to satisfactorily perform the cleaning and maintenance of the sanitary sewers and manholes.

   b. The Contractor shall remove all foreign deposits such as sand, rocks, grease, sewage solids and other solid or semi-solid matter from the sewer line and manholes.

   c. During all cleaning operations, satisfactory precautions shall be taken to protect the sewer lines and drainage structures from damage that might be inflicted by the improper use of cleaning equipment. Precautions shall be taken to ensure that the water pressure created by the cleaning tools does not cause any structural damage to the existing pipe or flooding of public or private property.

   d. Traffic shall be maintained in accordance with the New York State Department of Transportation's "Manual of Uniform Traffic Control".

2. **Duration**

The term of the Contract shall commence February 1, 2010. The Village reserves the right to award the Contract for a one (1), two (2), three (3), or four (4) year term based on whichever the Village deems to be in its best interest.

In the event there is mutual agreement to extend the Contract for a fifth year the prices bid herein for the fourth Contract year shall be adjusted for the fifth Contract year to reflect an increase, if any, equal to the percentage of increase in the cost of living as evidenced by the Consumer Price Index as maintained by the United States Department of Labor, Bureau of Labor Statistics, or its successor, for the New York North-Eastern New Jersey region using as a base period 2012 and as the comparative period 2013.

The Village may extend the contract by giving notice thereof to the Contractor by Certified Mail Return Receipt Requested, at least ninety (90) days before the expiration of the initial period and any subsequent Contract period. The Contractor shall advise the Village in writing of its desire to accept or decline any offer to extend by the Village in writing within fifteen (15) days of the date Contractor receives notice from the Village of its desire to extend the Contract.

3. **Definitions**

a) **Pollution Control District** – The Port Washington Pollution Control District with offices on Harbor Road, Port Washington.

b) **Sewer** – The sanitary sewer system within the Village of Manorhaven.

c) **Town** – Town of North Hempstead

d) **Village** - Incorporated Village of Manorhaven

4. **Location of Service:**

The Manorhaven Village Sewer System as defined and diagramed in Attachment I.

5. **Equipment**

The sewer and manholes shall be cleaned using a "Vactor" type, truck mounted, high performance sewer and catch basin cleaning machine. The equipment shall have a jet rodder, water pump, telescoping and rotating hose reel with minimum six hundred feet (600') of high pressure hose and no less than one thousand two hundred (1,200) gallons of water capacity. The unit must be able to deliver a water flow of sixty to eighty gallons per minute (60-80 gpm) at a pressure of two-thousand to twenty five hundred (2000-2500) psi. The equipment shall have a selection of three (3) or more high velocity nozzles and a high velocity gun for washing and scouring of manhole walls and floors. The nozzles shall be capable of producing a scouring action from fifteen (15°) degrees to forty-five (45°) degrees and shall be of a design which will effectively remove sand and grease. One of the nozzles shall be designed for penetrating stoppages.

Two such cleaning units with no fewer than two (2) men per unit must be available for all cleaning work and the Contractor must have one more unit, minimum, as a backup unit.

A Vactor or equal vacuum truck shall be used for the removal of material and debris.

A "Rodder" truck mounted unit with a continuous power rodder capable of pushing continuous rod up to one thousand feet (1,000') with hydraulic drive and a longitudinal reel will be used if conditions warrant.

## 6. Frequency of Service

There are two cleaning schedules. The entire system will be cleaned once per year ("Annual Cleaning"). Areas that have historically proven to need additional cleaning will be subject to "Periodic Cleanings" as defined herein below.

### Annual Cleaning

All sewer lines (approximately 60,000 linear feet), manholes and connectors will be cleaned and inspected once each year. The cleaning will take place in the spring or at another time mutually acceptable to the Village and Contractor.

### Periodic Cleanings

In addition to the Annual Cleaning, the specific segments of the sewer system listed below shall be cleaned in accordance with the specified frequency which, inclusive of the Annual Cleaning, shall be as scheduled below, 3, 4, or 6 times per year ("Periodic Cleanings"). The Periodic Cleanings shall be scheduled to allow for an approximately equal period of time between them. (i.e. Three (3) cleanings per year shall be spaced approximately four (4) months apart. Six (6) cleanings per year, 2 months apart, etc.)

| Location | Manhole # | Historic Problem | Frequency/Yr. |
|----------|-----------|------------------|---------------|
| Mohegan Avenue | 249-251 | Grease | 3 |
| Mohegan Avenue | 193-194 | Roots | 3 |
| Dunes Lane | 128-130 | Roots | 3 |
| Linwood Road | 114-113 | Roots | 3 |
| West Drive | 172-176 | Roots | 3 |
| Yennicock Avenue | 201-210 | Roots & Grease | 4 |
| Manhasset Avenue | 259-261 | Sand & Grease | 4 |
| Corchaug Avenue | 223-225 | Grease | 4 |
| Secatoag Avenue | 213-214 | Sand | 6 |
| Firwood Road | 38-39 | Grease | 6 |
| Graywood | 28-30 | Grease | 6 |
| Hickory Road | 19 - 20 | Grease | 6 |
| Inwood Road | 9 - 10 | Grease | 6 |
| Manorhaven Blvd. | 9 - 65 | Grease | 6 |
| Manorhaven Blvd. | 6-154 (right of way) | Grease | 6 |
| Manorhaven Blvd. | 9-128 | Grease | 6 |
| Orchard Beach Blvd. | 160-168 | Grease and Roots | 6 |

| Kirkwood Road | 186-188 | Grease | 6 |
| Kirkwood Road | 182-183 | Grease | 6 |
| Juniper Road | 101-102 | Grease | 6 |

The days/time of operation will be mutually agreed to prior to the initiation of each cleaning.

Monthly Treatment

Contractor will be required to provide for the monthly treatment of sewer lines in order to keep them free of organic and grease build-up. Only organic treatment will be used. Contractor shall use DIGEST and SEWER CLEANER (available from Chem Labs and Services, Inc.) or equivalent. It should be noted that these products must be introduced into the system 72 hours apart from each other. The cost of this product and the service at the following locations should be included in your quotation.

| Location | Manhole # | Historic Problem | Frequency/Yr. |
|---|---|---|---|
| Firwood Road | 8 | Grease / Organic | 12 |
| Hickory Road | 7a | Grease / Organic | 12 |
| Inwood Road | 6, 55 | Grease / Organic | 12 |
| Kirkwood Road | 8 | Grease / Organic | 12 |
| Orchard Beach Blvd. | 37 | Grease / Organic | 12 |
| Manorhaven Blvd. | 73, 320 | Grease / Organic | 12 |
| Shore Rd. | 124 | Grease / Organic | 12 |
| Pequot Avenue | 6 | Grease / Organic | 12 |
| Corchaug Avenue | 8 | Grease / Organic | 12 |

**7.   Line Blockages and Obstructions**

When there are instances of root intrusion the use of the sewer rodder may be required. When appropriate, based on the type of blockage, prior cleaning data, and with the approval of the Village, chemicals will be added to certain segments of the sewer system to deter root growth.

When grease is encountered the Contractor will add a chemical degreaser/sewer cleaner to the flushing water to aid in the cleaning.

When there is blockage caused by a broken or damaged line the Contractor will repair the line and return it to operation as quickly as possible. This type of work will be considered an emergency service and paid for in accordance with the Rates for

Additional Services and Equipment portion of the Proposal contained in the Bid documents.

## 8.   Material Removal and Disposal

In the event the Contractor shall have to remove foreign deposits such as sand, dirt, gravel and
other solid or semi-solid matter from the sewer the following shall apply. Removal will be done using a "Vactor" type, truck mounted unit with a positive displacement blower, or equal, to assure complete cleaning. All solids shall be stored and transported on the truck in a totally enclosed container approved for such use.  All materials shall be removed from the work site no less often than daily.  Under no circumstances shall solids be accumulated and stored at the site of the work.  Such collected material shall be the responsibility of the Contractor and disposed of in accordance with all applicable laws, rules and regulations.  The charge for disposal will be passed through to the Village by the Contractor with appropriate supporting documentation.  The Contractor's fee for the removal and disposal service will be in accordance with the Rates for Additional Services and Equipment portion of the proposal contained in the bid documents.

In the event that the Contractor shall have to utilize equipment and/or services which are not specified elsewhere in this bid document to carry out a repair, the Contractor shall be paid by the Village for the provision of same at the "Cost Plus" Percentage for Repairs and Disposal Fees set forth in the Rates For Additional Services & Equipment set forth in its bid on Page E-4.

## 9.   Water Supply

The Village will not supply water for this Contract.  The Contractor must provide proof of a legal source for water prior to the start of the Contract.  Failure to do so may be cause for termination of the contract.

## 10.  Protection from Dangerous Gases

Dangerous gases may be present in the sewers and manholes to be cleaned.  If dangerous, hazardous or explosive gases are present, they shall be removed prior to entry via the appropriate OSHA protocol.

## 11.  Time of Service

Services shall be provided between 8:00 AM and 4:30 PM for scheduled work.  The Contractor will be on-call every day of the year, twenty-four hours per day, seven days per week for emergency service.

## 12. Emergency Service Response

Calls for emergency service for sanitary sewers are directed to the Village 24 hours per day, 7 days per week for the initial screening/response. A designated Village representative will contact the Contractor, if deemed necessary.

The Contractor must respond to the Village representative's page, call, or mutually acceptable communication system within 30 minutes from the time of the Village's contact. If requested,
the Contractor must be on site in the Village within 1 hour of receiving from the Village representative a request to make an "Emergency Response/Evaluation". The charge for each Emergency Response/ Evaluation will be in accordance with the Contractor's bid item for this service.

In the event the emergency requires repair service or other services for the Village sewers, the Contractor will have the necessary equipment on site as quickly as possible. All equipment, manpower and charges for Emergency Response will be in accordance with the bid Rates For Additional Services and Equipment.

In the event that the Contractor shall have to utilize equipment and/or services which are not specified elsewhere in this bid document to carry out a repair, the Contractor shall be paid by the Village for the provision of same at the "Cost Plus" Percentage for Repairs and Disposal Fees set forth in the Rates For Additional Services & Equipment set forth in its bid on Page E-4.

All emergency service and repair work will be done in full compliance of all local, state and federal rules and regulations covering the type of repair.


## 13. Manner of Service

All services provided shall be effectuated by the Contractor in a safe, orderly and efficient manner. The Contractor shall apply customary and acceptable techniques so as to provide a safe and productive working environment. The Contractor shall furnish all equipment, labor, cleaning materials, tools, and temporary barricades, warning signs, cones, and other safety precautions and all other things necessary or proper for or incidental to such cleaning of the sewers.


## 14. Clean Water Act Information & Compliance

The sanitary sewer system is covered under the Clean Water Act. The Village is required to file periodic reports relative to the sewer system. The Contractor is required to comply with all requirements under the Act and to provide the Village with all necessary information for the Village to comply with all requirements under the Act. The Village will inform the Contractor from time to time as to the specific information required.

**15. Laws**

a)   The Contractor shall conform to all applicable governmental laws and regulations and shall procure at its own expense any licenses or permits and shall pay any and all license fees or charges required for said procurement.

b)   This Contract shall be void and of no effect unless the Contractor shall secure worker's compensation insurance to the benefit of and keep insured during the life of this Contract, all individuals in his employ in compliance with the provisions of the Workers Compensation Law of the State of New York.

c)   The following provisions relating to every contract for or on behalf of the State or a municipality for the manufacture, sale, or distribution of materials, equipment or supplies shall be applicable to this Agreement and performed and observed by the Contractor but shall be limited to operations performed within the territorial limits of the State of New York.

1)   in the hiring of employees for the performance of work under this Agreement, or any subcontract hereunder, neither the Contractor nor any person acting on its behalf, shall by reason of race, creed, color, national origin, sex or disability discriminate against any citizen of the State of New York who is qualified and available to perform the work to which the employment relates;

2)   neither the Contractor nor any person acting on its behalf, shall in any manner discriminate against or intimidate any employee hired for the performance of work under this Agreement on account of race, creed, color, national origin, sex or disability;

3)   there may be deducted by the amount payable to Collector by the State or municipality under this Agreement a penalty of fifty ($50.00) dollars, or such higher amount as may be provided by law, for each person for each calendar day during which such person was discriminated against or intimidated in violation of the provisions of this Agreement;

4)   This Agreement may be canceled or terminated by the State or municipality, and all moneys due or to become due hereunder may be forfeited for a second or any subsequent violation of the terms and conditions of this Section 15c of this Agreement;

**16. Inspection**

The Village shall have the right to appoint or designate an inspector for the purpose of ascertaining whether or not the Contractor is performing in accordance with the terms of this Contract. Upon request from and at the Village's cost the Contractor may supply television inspection and tapes for the Village to review and accept as proof of service.

### 17. Contractor's Facilities & Equipment

The Village has determined that in order to ensure the timely and efficient response to the service needs required under this Contract it is in the best interest of the Village that the Contractor be required to maintain a facility for servicing the Village either within the Village itself or within a reasonably proximate distance thereto. Accordingly, the Contractor shall maintain and staff an office and vehicle storage, repair and maintenance facility within four (4) roadway miles of the Village.

The repair and maintenance facility shall be (a) state-of-the-art and staffed with full time truck and equipment mechanics fully trained in the maintenance and repairs of the equipment required under this Contract to ensure that if and when necessary repairs to the Contract equipment will be made quickly and effectively; (b) have sufficient heated garage space so that during the winter months this Contract equipment will be kept in a ready condition and available for dispatch on short notice in the event the need arises; and (c) properly permitted and zoned for equipment storage and repairs. Failure by the Bidder to conclusively demonstrate to the sole and absolute satisfaction of the Village its ability to provide and maintain the required facilities as hereinabove set forth shall result in the rejection of the Bid.

The offices will be equipped with a telephone, which will be answered in person between 8:30 a.m. and 5:30 p.m., Mondays through Fridays (except holidays). A written log of calls received which shall include all pertinent information including dates and times shall be maintained by Contractor for submission or review as may be required, from time to time, by the Village.

Each vehicle used in the performance of this Contract shall be properly registered and have the name of the Contractor and a truck number legibly printed on the exterior of the vehicle, and said vehicle shall be kept in thorough repair, painted, cleaned and disinfected to the satisfaction of the Village. All the compartments of such vehicles which are used to store and transport material removed during the cleaning process shall be completely enclosed and so constructed as to prevent dripping of liquids or the escape of solids onto streets or public or private property.

### 18. Insurance

The Contractor shall not commence any work until it has obtained and had approved by the Village evidence of insurance coverage for its operations and activities under this agreement in the amounts set forth below.

a)   Workers Compensation Insurance and Employers Liability and Disability Benefits Insurance as required by Law and with specific acknowledgment of the provisions of section 108 of the General Municipal Law.

b)   Comprehensive General Public Liability and Property Damage Insurance (Broad Form). The Village and its agents and employees must be named and covered as

ADDITIONAL INSURED. Required minimum limits: Bodily injury and property damage, $10,000,000 per
accident single limit. An exact copy of this policy must be furnished to the Village.

c)  Contractual Liability Insurance with "Hold Harmless Agreement". (May be included in Broad Form Comprehensive General Liability policy).

d)  The following HOLD HARMLESS AGREEMENT shall be embodied into the above described Comprehensive General Liability Policy (or a separate Contractual Liability policy in the amounts above mentioned may be presented) and must be evidenced on any Certificate of Insurance presented to the Village:

   "The Contractor agrees to defend, indemnify and hold harmless the Village of Manorhaven and its agents, employees, and elected and appointed officials against loss or expense by reason of the liability imposed by laws upon the Village for damage because of bodily injuries, including death at any time resulting therefrom, sustained by any person or persons including employees or on account of damage to property, including loss of use thereof, arising out of or in consequence of the performance of the work required to be performed by the Contractor or any subcontractor under this agreement, whether or not such injury to persons or damage to property are due or claim to be due to any negligence of a subcontractor, the Contractor, or the Village or its employees or agents. Provided, however, (A) if Contractor has performed in accordance with the requirements of the Contract and is not negligent in doing so or (B) if acts of God or acts beyond the Contractor's control, such as, without limitation, explosions, storms, natural disasters, civil unrest, insurrections, then in these circumstances, the HOLD HARMLESS and indemnification clause mentioned above shall be of no force and effect against Contractor."

e)  Comprehensive Automobile Liability Insurance - Minimum $10,000,000 combined Single Limit, covering all owned, non-owned hired and leased vehicles.

f)  All policies and certificates must provide that thirty (30) days prior notice will be given to the Village by registered mail for any termination, cancellation or modification of the insurance.

g)  Insurance Companies providing the required insurance policies must be New York State licensed and admitted carriers, have a policy holder's rating of "A" or better and a financial rating of at least "10" according to the current Best Insurance Rating Guide.

## 19.  Expenses

The Contractor shall furnish all labor, equipment, trucks, materials and all other things necessary for the performance of the Annual and Periodic Cleanings specified in this Contract, at his own cost and expense, including any and all necessary insurance and fees.

## 20. Payments

Billing for the Annual Cleaning service will be made at the end of the month in which the Annual Cleaning service is completed. Payment will be made by the Village to the Contractor within thirty (30) days of receipt of the invoice.

Billing for the Periodic Cleaning service and for the Monthly Treatments will be made at the conclusion of each month in the amount of one twelfth (1/12) of the yearly prices bid. Payment for the Periodic Cleaning service and for the Monthly Treatments will be made by the Village to the Contractor within thirty (30) days of receipt of the invoice.

Billing for Emergency services will be made at the end of the month in which such services are performed. Payment for Emergency services will be made by the Village to the Contractor within thirty (30) days of receipt of the invoice.

Said prices shall be determined by the Contractor's bid document, which bid is on file in the Office of the Village Clerk. For the purpose of this clause, the written bid of the Contractor is made part of and incorporated into this Contract and will control for the determination of the consideration to be paid to the Contractor.

## 21.  No Assignment

Pursuant to Section 109 of the General Municipal Law of the State of New York, Contractor is prohibited from assigning, transferring, conveying, subletting or otherwise disposing of this
Agreement, or of his right, title and interest therein, or of his power to execute this Agreement, to any other person or corporation, without the prior written consent of the Board of Trustees of the Village. Penalties for violation of this Section shall be as provided in Section 109 subparagraph 2 of the General Municipal Law of the State of New York

## 22.  Termination of Agreement

The Village shall have the right, at its sole option, and in addition to any other remedies available to it by this Agreement, at law or in equity, to terminate this Agreement by notice upon the occurrence of any of the following events without any further or other obligation on the part of the Village.

**a)**   any breach of any of the agreements, warranties, representations or covenants made by the Contractor herein;

**b)**   Contractor's failure to obtain or maintain any insurance required hereunder or the failure or refusal to post the performance bond, if required hereunder, in the proper amount;

**c)**   Contractor's continuing, repeated or willful failure or refusal to perform the services contracted for in a proper manner in accordance with the terms and provisions of this Agreement provided, however, that the Contractor shall have first received written

notice from the Village advising Contractor of the specific acts or omissions alleged to constitute a failure to   perform the services contracted for in a proper manner and such failure or refusal
continues after Contractor shall have had five (5) days to correct the acts or omissions giving rise to the complaint of such failure or refusal or, having corrected such acts or omissions, identical or substantially similar acts or omissions are committed by the Contractor.

### 23.  Miscellaneous

a)  In addition to the Village's right to terminate this Agreement, and without any limitation thereto, the Contractor shall pay to the Village the sum of fifty ($50.00) dollars for each calendar day after such termination (excluding Sundays and legal holidays) that any work or services required to be performed hereunder shall remain unfinished due to the inability of the Village to contract with another Contractor in sufficient time to prevent an interruption of the cleaning and maintenance service. In view of the difficulty of ascertaining the loss and expense which the Village will suffer by reason of delays in the performance of the work and services to be provided hereunder, such sum is hereby agreed upon, fixed and determined by the parties hereto as the liquidated damages that the Village will suffer by reason of such failures and default and not as a penalty, unless such failures shall have been caused by some act or omission on the part of the Village or for some other reason entirely beyond the control of the Contractor. Nothing contained herein shall be deemed or construed as limiting the Village's right to seek other damages incurred by it as a result of a breach of this Agreement by the Contractor or termination by the Village.

b)  The Village shall have the right and is hereby authorized to deduct and retain the amount or amounts of such liquidated damages as may accrue hereunder out of the moneys which may be due or become due to the Contractor under this Agreement, or if such moneys are not sufficient to meet said expense, the amount of the deficiency shall be paid to the Village by the Contractor or his surety.

c)  In addition to any remedies available to the Village by this Agreement, by law or in equity, in the event Contractor fails or refuses to perform any of the terms or conditions of this Agreement, at its sole option, the Village may undertake to perform or cause another party to perform such term or condition on behalf of the Contractor and deduct and retain the amount or amounts so expended by it out of the moneys which may be due or become due to the Contractor under this Agreement. By way of illustration and not limitation, upon the Contractor's failure to obtain or maintain the insurance hereunder, the Village may advance the premiums therefor to effectuate such insurance and obtain reimbursement from the next payment due to Contractor.

d)  Each and every provision of law and clause required by law to be inserted in this Agreement shall be deemed to be inserted herein and this Agreement shall be read and enforced as though such provisions or clause were included herein. If through

mistake or otherwise any such provision or clause shall not have been inserted or is incorrectly inserted, upon notice from either party to the other containing such omitted or improperly inserted provision or clause, this Agreement shall be deemed amended to make or correct such insertion. This Section shall survive termination of this Agreement.

## 24. Entire Agreement

This Agreement, together with the Bid Documents, shall supersede all prior agreements and understandings, both written and oral, between the parties hereto with respect to the subject matter hereof. Neither party shall be liable or bound to the other in any manner by any warranties or representations not set forth herein or contemplated hereby.

## 25. Successors and Assigns

The terms and conditions of this Agreement shall inure to the benefit of and binding upon the respective successors and assigns of the parties hereto.

## 26. Identical Counterparts

This Agreement may be executed in one or more counterparts, all of which shall be considered one and the same agreement and shall become effective when one or more counterparts have been signed by each of the parties and delivered to the other.

## 27. Headings

The headings of the sections of this Agreement are inserted for convenience only and shall not be deemed to constitute part of this Agreement or to affect the construction thereof.

## 28. No Waiver

No waiver by either party of any rights hereunder shall be effective unless in writing, signed by the party sought to be charged therewith, and in any event shall be effective only in the specific instance for which given. The failure of any party to insist upon strict performance of any term or condition of this Agreement shall not be viewed as a waiver of such term or condition nor prevent such party from insisting upon strict performance of any term or condition in the future.

**29. Notices**

Any notice, request, instruction or other document to be given hereunder by any party to the other shall be in writing, sent by certified mail, postage prepaid, return receipt requested, to the parties at the following address:

**(a)** if to the Contractor:     DEJANA INDUSTRIES, INC.
30 SAGAMORE HILL DRIVE
PORT WASHINGTON, NY 11050
ATTN: MANAGER CONTRACTS

**(b)** if to the Village:     Incorporated Village of Manorhaven
33 Manorhaven Blvd.
Manorhaven, New York 11050

or at such other address for a party as shall be specified by like notice. Any notice which is addressed and mailed in the manner herein provided shall be conclusively presumed to have been given to the party to whom it is addressed at the close of business on the third business day after it is so placed in the mail.

**30. Governing Law**

The parties hereby agree that this Agreement shall be construed, enforced and governed by the laws of the State of New York.

**31. Invalid Provisions**

If any provision of this Agreement is held to be illegal, invalid or unenforceable under present or future laws, such provision shall be fully severable and this Agreement shall be construed and enforced as if such illegal, invalid or unenforceable provision had never comprised a part of this Agreement and the remaining provisions of this Agreement shall remain in full force and effect and shall not be affected by the illegal, invalid or unenforceable provisions or by its severance from this Agreement.

**32. Remedies Cumulative**

The remedies of the Village under this Agreement are cumulative and will not exclude any other remedies to which it may be lawfully entitled.

IN WITNESS WHEREOF, the Village and the Contractor have caused this agreement to be duly executed as of the day and year first written above.

INCORPORATED VILLAGE OF MANORHAVEN

BY _____
                    MAYOR

DEJANA INDUSTRIES, Inc.

BY _____

STATE OF NEW YORK     )
                      ) SS:
COUNTY OF NASSAU      )

On this ___25th___ day of ___February___ 2010, before me personally came _Michael T. Meehan_, to me personally known, who, being by me duly sworn, did dispose and say that he resides within the Village of Manorhaven, New York, 11050; that he is the Mayor of the Incorporated Village of Manorhaven, the municipal corporation described in, and which executed the above instrument; that he knows the corporate seal of said Village; that the seal affixed to said instrument is such corporate seal; that it was so affixed by order of the Board of Trustees of said Village; and that he signed his name thereto by like order.

STATE OF NEW YORK     )
                      )SS:
COUNTY OF NASSAU      )

JONATHAN PAUL FIELDING
Notary Public - State of New York
No. 02FI6126728
Qualified in Nassau County
My Commission Expires May 09, 201_

On this ___31st___ day of ___March___, 2010, before me personally came _William F. Wynpearle, Jr._, to me known, who, being by me duly sworn, did depose and say that he resides at _Great Neck, NY_ that he is the _Exec. Vice President_ of the corporation described in and which executed the foregoing instrument; that he knows the seal of said corporation; that the seal affixed to said instrument is such corporate seal; that it was so affixed by order of the Board of Directors, and that he signed his name thereto by like order.

_____
Notary Public, _Nassau_ County, NY

MICHAEL INGER
Notary Public, State of New York
No. 01IN6126512
Qualified in Nassau County
Commission Expires May 9, 20_13_