UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------X
DEJANA INDUSTRIES, INC.,

                    Plaintiff,

        -against-                  <u>MEMORANDUM & ORDER</u>
                                         12-CV-5140(JS)(SIL)

THE VILLAGE OF MANORHAVEN and GIOVANNA
GIUNTA, individually and in her
official capacity as Mayor of the
Village of Manorhaven,

                    Defendants.
---------------------------------------X
APPEARANCES
For Plaintiff:       John E. Ryan, Esq.
                  Ryan Brennan & Donnelly LLP
                  131 Tulip Avenue
                  Floral Park, NY 11001

For Defendants:      Jeffrey B. Siler, Esq.
                  Siler & Ingber, LLP
                  1399 Franklin Avenue, Suite 103
                  Garden City, NY 11530

SEYBERT, District Judge:

        Plaintiff Dejana Industries, Inc. ("Dejana" or "Plaintiff") commenced this action on October 12, 2012 against defendants the Village of Manorhaven (the "Village") and the Village's mayor, Giovanna Giunta ("Mayor Giunta," and together with the Village, "Defendants") pursuant to 42 U.S.C. § 1983, asserting a First Amendment retaliation claim and a breach of contract claim under New York state law. Dejana contends that Defendants terminated its publicly awarded contract to clean the Village's sewer system in retaliation for its support of candidates

that ran against Mayor Giunta and her political party in the Village's 2012 elections.  Dejana now moves for partial summary judgment as to liability.  (Docket Entry 20.)  For the following reasons, Dejana's motion for summary judgment is DENIED.

BACKGROUND

I.  <u>Procedural Defects</u>

Before discussing the record in this case, the Court must address several procedural defects in Defendants' Local Civil Rule 56.1 Statement and other opposition papers.  The Local Civil Rules regarding summary judgment should be well known to attorneys litigating in this Court.  Under Local Civil Rule 56.1, a party moving for summary judgment must file "a separate, short and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried."  LOCAL CIV. R. 56.1(a).  The party opposing summary judgment, in turn, must file "a correspondingly numbered paragraph responding to each numbered paragraph in the statement of the moving party, and if necessary, additional paragraphs containing a separate, short and concise statement of additional material facts as to which it is contended that there exists a genuine issue to be tried."  LOCAL CIV. R. 56.1(b).

If the party opposing summary judgment denies any of the facts in the movant's 56.1 statement, the opposing party must "support its position by citing to admissible evidence in the

2

record." Baity v. Kralik, --- F. Supp.3d ----, 2014 WL 5010513, at *1 (S.D.N.Y. Sept. 30, 2014) (internal quotation marks and citation omitted); see LOCAL CIV. R. 56.1(d) ("Each statement by the movant or opponent pursuant to Rule 56.1(a) and (b), including each statement controverting any statement of material fact, must be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)." (emphasis added)). Responses that "do not point to any evidence in the record that may create a genuine issue of material fact[ ] do not function as denials, and will be deemed admissions of the stated fact." Risco v. McHugh, 868 F. Supp. 2d 75, 86 n.2 (S.D.N.Y. 2012) (internal quotation marks and citation omitted); see LOCAL CIV. R. 56.1(c) ("Each numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party will be deemed to be admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party."). "The purpose of Local Rule 56.1 is to streamline the consideration of summary judgment motions by freeing district courts from the need to hunt through voluminous records without guidance from the parties." Holtz v. Rockefeller & Co., 258 F.3d 62, 74 (2d Cir. 2001).

Defendants' submissions do not comply with the purpose or the letter of the Local Rules. Defendants are opposing summary

judgment. However, for reasons unknown to the Court, Defendants'
counsel filed a Rule 56.1 statement of <u>undisputed</u> material facts
that a movant would file in support of a motion summary judgment.
(<u>See</u> Defs.' First 56.1 Stmt., Docket Entry 20-7, at 12-15[1].)
Likewise, Dejana is the movant, but its counsel filed a Rule 56.1
statement responding to Defendants' Rule 56.1 statement. (<u>See</u>
Pl.'s 56.1 Stmt., Docket Entry 20-7, 17-23.) The undersigned's
Individual Motion Practices require litigants to exchange Rule
56.1 statements prior to moving for summary judgment. The Court
can only surmise that Defendants intended to move for summary
judgment, served an initial 56.1 statement, and then decided not
to move. Whatever the reason is for the improper order of 56.1
submissions, counsel either should have corrected the submissions,
or at least brought the issue to the Court's attention.

Nevertheless, in addition to responding to Defendants'
56.1 Statement, Dejana's 56.1 Statement also contains a section of
numbered paragraphs of undisputed material facts that would
ordinarily constitute a movant's initial 56.1 statement in support
of summary judgment, (<u>see</u> Pl.'s 56.1 Stmt. ¶¶ 22-36), and
Defendants filed a second 56.1 statement responding to the facts
asserted in Dejana's 56.1 statement, (<u>see</u> Defs.' Second 56.1 Stmt.

---

[1] The page numbers of the parties' 56.1 Statements and exhibits
refer to those page numbers provided by the Electronic Case
Filing system.

Docket Entry 20-7, at 25-26). Accordingly, the Court will refer to all three 56.1 statements in deciding Dejana's motion.

Unfortunately, the improper order of the 56.1 submissions is not the only procedural defect here. Defendants' second 56.1 Statement also fails to comply with Local Civil Rule 56.1 because the responses contained therein do not include citations to admissible evidence in the record. (See Defs.' Second 56.1 Stmt.) Defendants' other opposition papers fare no better, as their Memorandum of Law in Opposition to Dejana's Motion for Summary Judgment barely contains citations to the record, despite making numerous fact-intensive arguments. (See Defs.' Opp. Br., Docket Entry 22-14.) Additionally, Jeffery Siler is the only attorney who has entered an electronic notice of appearance on behalf of Defendants. Yet, Maria Massucci, an associate at Mr. Siler's law firm submitted her own affirmation in opposition to Plaintiff's motion for summary judgment. (See Massucci Affirm., Docket Entry 22.) Because counsel has not filed a notice of appearance, the Court will not consider her affirmation.

But even if counsel had properly appeared, her affirmation is wholly inadmissible. Unlike the typical attorney affirmation, which simply attaches and identifies exhibits for the Court, counsel's affirmation consists entirely of factual assertions and legal arguments regarding Defendants' evidence. This type of affirmation is improper and inadmissible for two

reasons.  First, Federal Rule of Civil Procedure 56(d) states that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."  FED. R. CIV. P. 56(c)(4).  Counsel's affirmation could not possibly be based on personal knowledge because it is based entirely on counsel's own interpretation of the evidence in the record.  See Risco, 868 F. Supp. 2d at 86 n.2 (stating that the attorney affiant "could not possibly have personal knowledge of the matters discussed, as evidenced by the fact that the affirmation--unlike counsel's other submissions--actually contains citations to the record"); see also Little v. City of N.Y., 487 F. Supp. 2d 426, 433 n.2 (S.D.N.Y. 2007) ("The law is clear that an attorney's affirmation that is not based on personal knowledge of the relevant facts is to be accorded no weight on a motion for summary judgment.").

Second, under Local Civil Rule 7.1, legal argument must be set forth in a memorandum of law, not in an attorney affirmation.  See LOCAL CIV. R. 7.1(a) (stating that all motions "shall include . . . [a] memorandum of law, setting forth the cases and other authorities relied upon in support of the motion" and "[s]upporting affidavits and exhibits . . . containing any factual information and portions of the record necessary for the decision of the motion"); Baity, 2014 WL 5010513, at *2 (rejecting attorney

6

affirmation based upon, _inter_ _alia_, that the affirmation improperly contained legal argument); Dell's Maraschino Cherries Co. v. Shoreline Fruit Growers, Inc., 887 F. Supp. 2d 459, 465 n.3 (E.D.N.Y. 2012) ("Placing legal argument in an affidavit is plainly improper, and the Court will only consider the facts in the affidavit that are based on . . . personal knowledge and admissible in evidence.").

Based on all of these deficiencies, particularly with respect to Defendants' 56.1 Statement, the Court would be well within its authority to simply disregard Defendants' 56.1 Statement and accept Dejana's stated facts as admissions to the extent that those facts are supported by admissible evidence. See, e.g., Topalian v. Hartford Life Ins. Co., 945 F. Supp. 2d 294, 299 n.2 (E.D.N.Y. 2013) ("To the extent that the parties have failed to cite to admissible evidence in support of factual assertions in their respective Rule 56.1 Statements and Responses, the court has disregarded such unsupported factual assertions."); Costello v. N.Y. State Nurses Ass'n, 783 F. Supp. 2d 656, 661-62 n.5 (S.D.N.Y. 2011) (disregarding responses in a litigant's 56.1 counterstatement that "fail[ed] to refer to any evidence in the record to support [the litigant's] contention that certain facts are disputed"). However, "[a] district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules . . . . [and] may in its discretion opt to

conduct an assiduous review of the record even where one of the parties has failed to file such a statement." Holtz, 258 F.3d at 73 (internal quotation marks and citations omitted). Here, the Court will overlook counsel's noncompliance because the Court prefers to resolve cases on the merits and because the record in this case is relatively small. See Lopez v. Echebia, 693 F. Supp. 2d 381, 386 (S.D.N.Y. 2010) (excusing the defendant's failure to file a Rule 56.1 statement because "its absence [did not] create[ ] difficulty for the court"). Nonetheless, counsel should be cognizant that these deficiencies have required the Court to parse through the record to ensure that the arguments set forth in Defendants' memorandum of law receive adequate consideration. In the future, a failure to adhere to the applicable procedural rules may not be treated with the same leniency. The Court will now turn to the evidence before it.

## II.  Factual Background

Dejana is a company located in Port Washington, New York that provides a variety of outdoor services to municipalities and other commercial customers. Starting in 2009, Dejana worked for the Village as an independent contractor pursuant to two written contracts--one for garbage collection and the other for cleaning and maintaining the Village's sewer system.

On January 28, 2010, following a public bidding process, the Village's Board of Trustees adopted a resolution awarding the

sewer cleaning contract to Dejana.[2]  (Donnelly Decl., Docket Entry 20-4, Ex. B at 22-24.)  The resolution stated that Dejana was "the lowest responsible bidder" and that the term of the contract was June 1, 2010 to May 31, 2015.  (Donnelly Decl. Ex. B at 22.) Dejana and the Village formally executed the contract on April 1, 2010.  (Donnelly Decl. Ex. A, (the "Sewer Cleaning Contract"), at 2-20.)

The contract called for periodic cleanings and inspections of the Village's sewer system, specifically: (1) an annual cleaning and inspection of all sewer lines, manholes, and connectors; (2) periodic cleanings of certain manholes specified in the contract; and (3) monthly chemical treatments of certain sewer lines specified in the contract.  (Sewer Cleaning Contract § 6.)  The contract also called for emergency services and repair work if necessary.  (Sewer Cleaning Contract § 12.)  Pursuant to section 22 of the contract, the Village could terminate the contract "by notice upon the occurrence" of any of the following events:

> a)   any breach of the agreements, warranties, representations or covenants made by [Dejana];

---

[2] Under Section 103(1) of the New York General Municipal Law, municipalities must use a competitive bidding process for the award of "all contracts for public work involving an expenditure of more than thirty-five thousand dollars."  N.Y. GEN. MUN. LAW § 103(1).

b)  [Dejana's] failure to obtain or maintain any insurance required [under the contract] or the failure or refusal to post [a] performance bond . . . ; [and]

c)  [Dejana's] continuing, repeated or willful failure or refusal to perform the services contracted for in a proper manner in accordance with the terms and provisions of [the contract] provided, however, that [Dejana] shall have first received written notice from the Village advising [Dejana] of the specific act or omissions alleged to constitute a failure to perform the services contracted for in a proper manner and such failure or refusal continues after [Dejana] shall have had five (5) days to correct the acts or omissions giving rise to the complaint of such failure or refusal or, having corrected such acts or omissions, identical or substantially similar acts or omissions are committed by [Dejana].

(Sewer Cleaning Contract § 22.)

Plaintiff cleaned and inspected the Village's sewer system until July 27, 2012 when the Village terminated the contract in writing. Earlier that year, Giovanna Giunta was elected as the Village's new mayor, and Mark Lazorovic and Noelle Smith, two members of Mayor Giunta's political party, were elected as new trustees to the Board of Trustees. (Peter Dejana Aff., Docket Entry 20-2, ¶ 13.) According to Dejana's President, Peter Dejana, Dejana provided financial support and campaigned on behalf of candidates that ran against Mayor Giunta and Trustees Lazorovic

and Smith in the 2012 elections.[3]  (Peter Dejana Aff. ¶ 12; Peter Dejana's 50-h Tr., Docket Entry 22-2, 27-28:24.)

The Village's brief termination notice, dated July 27, 2012, came one day after the new administration's first meeting of the Board of Trustees.  (See Donnelly Decl. Exs. C, E.)  The notice indicated that the Board of Trustees decided to discontinue using an outside contractor to service the sewer system:

> Pursuant to our e-mail correspondence on Friday, July 27, 2012 and by this letter, Dejana Industries, Inc. and Affiliates is to immediately cease all chemical treatments and jetting of the lines to the Village's sewers. The Village Board of Trustees has decided to terminate that service using outside contractors.  Dejana Industries, or any other outside third party vendor, will no longer provide that service to the Village.

(Donnelly Decl. Ex. E.)  The notice did not invoke any of the triggering events listed in paragraph 22 of the contract that would permit the Village to terminate the contract, nor is there any evidence in the record that the Village ever complained to Dejana about its performance.  Later that summer, the Village's summer newsletter included a message from Mayor Giunta to the Village's residents claiming that the new administration created "substantial savings" for the Village by, among other things, "[e]liminat[ing] bacterial sewer treatment by Dejana Industries"

---

[3] The candidates that ran against Mayor Giunta were John DiLeo, who ran for mayor, and James Avena and Julian Patricio Aquilla, who both ran for trustee positions.  (Peter Dejana Aff. ¶ 12.)

and bringing that service "in house."  (Donnelly Decl. Ex. G at 2.)

Dejana commenced this action on October 12, 2012 against Mayor Giunta and the Village pursuant to 42 U.S.C. § 1983, alleging that they terminated Dejana's contract in retaliation for Dejana's support of the opponents of Mayor Giunta and Trustees Lazorovic and Smith.  Thereafter, on April 18, 2013, the Village's Board of Trustees adopted a resolution proposed by Mayor Giunta to retain an outside contractor, Port Plumbing, Inc., to clean the Village's sewer lines.  (Donnelly Decl. Ex. I at 16-17.)  According to Mayor Guinta's Board of Elections Disclosure Statement, Steven Blasucci ("Blasucci"), the owner of Port Plumbing, made a financial contribution to Mayor Giunta's campaign.  (Donnelly Decl. Ex. J at 23.)

On April 26, 2013, eight days after retaining Port Plumbing, the Village sent Dejana a letter advising that the Village would "not renew" Dejana's other contract for garbage collection.  (Donnelly Decl. Ex. L.)  According to the Village's letter, that contract was set to expire on May 31, 2013.  (Donnelly Decl. Ex. L.)  However, section 2 of that contract clearly states that the contract term was "for the period commencing June 1, 2009 and ending May 31, 2014 (as per the option approved by the Board of Trustees)."  (Donnelly Decl. Ex. K § 2.)  By letter dated April 30, 2013, Dejana alerted the Village that the contract was actually

set to expire a year later, on May 31, 2014. (Donnelly Decl. Ex. M.) According to Peter Dejana, "this oversight has not been acknowledged by the Village" and Dejana has not performed any garbage collection services for the Village since May 31, 2013. (Peter Dejana Aff. ¶ 19 (capitalization omitted).)

This action then continued with discovery, and Dejana filed its motion for partial summary judgment as to liability on April 30, 2014. (Docket Entry 20.) In opposition, Defendants filed affidavits from Mayor Giunta and Blasucci. In her affidavit, Mayor Giunta claims that the Village decided to terminate Dejana's sewer cleaning contract not because of Dejana's support of Mayor Giunta's political opponents, but because the Village was dissatisfied with Dejana's services and because Mayor Giunta witnessed a Dejana truck dumping raw sewage into Manhasset Bay. (See generally Giunta Aff., Docket Entry 22-4.) Mayor Giunta also claims that the Village intended to have its own employees maintain the sewer system in place of Dejana but that this eventually proved to be "not practical or feasible both financially and in staffing." (Giunta Aff. ¶¶ 12-13.) In his affidavit, Blasucci claims that after the Village retained Port Plumbing to clean the sewers, he inspected "numerous sewer lines" and, based on their conditions, concluded that "many of the manholes and lines had been neglected for many years." (Blasucci Aff., Docket Entry 22-5 ¶ 5.)

DISCUSSION

The Court will first set forth the applicable legal standards before turning to Dejana's motion more specifically.

## I.    Legal Standard

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). "In assessing the record to determine whether there is a genuine issue to be tried as to any material fact, the court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." McLee v. Chrysler Corp., 109 F.3d 130, 134 (2d Cir. 1997).

"The burden of showing the absence of any genuine dispute as to a material fact rests on the party seeking summary judgment." Id.; see also Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970). A genuine factual issue exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. To defeat summary judgment, "the non-movant must 'set forth specific facts showing that there is a genuine issue for trial.'"

14

Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000)

(quoting Anderson, 477 U.S. at 256). "[M]ere speculation or

conjecture as to the true nature of the facts" will not overcome

a motion for summary judgment. Knight v. U.S. Fire Ins. Co., 804

F.2d 9, 12 (2d Cir. 1986); see also Williams v. Smith, 781 F.2d

319, 323 (2d Cir. 1986) ("Mere conclusory allegations or denials

will not suffice." (citation omitted)); Weinstock, 224 F.3d at 41

("[U]nsupported allegations do not create a material issue of

fact.").

## II. First Amendment Retaliation

As noted, Dejana alleges that Mayor Giunta and the

Village terminated its sewer cleaning contract in retaliation for

Dejana exercising its First Amendment rights to support and

affiliate with Mayor Giunta's political opponents.[4] Dejana argues

that summary judgment in its favor is warranted on this claim

largely based on circumstantial evidence tending to show a

retaliatory motive behind the termination of the contract. (Pl.'s

---

[4] In Peter Dejana's affidavit in support of Dejana's motion,
Dejana clearly claims that Defendants also prematurely
terminated Dejana's garbage disposal contract. (Peter Dejana
Aff. ¶ 19.) This appears to be a valid claim. The Village
informed Dejana that it would "not renew" the garbage disposal
contract after May 31, 2013, notwithstanding the fact the
contract clearly states that the term of the contract lasted an
additional year--until May 31, 2014. Nonetheless, Dejana's
memorandum of law makes no mention of the garbage disposal
contract, nor has Dejana ever moved to amend its complaint to
assert a claim based on the termination of the garbage disposal
contract. The Court will therefore not consider any such claim.

Br., Docket Entry 20-9, at 6-11.)  As discussed below, while Dejana presents a compelling case, there are disputed issues of material fact regarding Defendants' motive that preclude summary judgment in Dejana's favor.

A.    Applicable Law

It is well settled that "[a] State may not condition public employment on an employee's exercise of his or her First Amendment rights." O'Hare Truck Serv., Inc. v. City of Northlake, 518 U.S. 712, 717, 116 S. Ct. 2353, 2356, 135 L. Ed. 2d 874 (1996). Government employees are constitutionally protected from termination based on their support or association with a particular political party, unless "party affiliation is an appropriate requirement for the effective performance of the public office involved." Branti v. Finkel, 445 U.S. 507, 518, 100 S. Ct. 1287, 1295, 63 L. Ed. 2d 574 (1980); accord Elrod v. Burns, 427 U.S. 347, 96 S. Ct. 2673, 49 L. Ed. 2d 547 (1976).  The First Amendment also "protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern." Garcetti v. Ceballos, 547 U.S. 410, 417, 126 S. Ct. 1951, 1957, 164 L. Ed. 2d 689 (2006) (citing Pickering v. Bd. of Educ., 391 U.S. 563, 88 S. Ct. 1731, 20 L. Ed. 2d 811 (1968)).

Dejana is not a government employee.  However, as an independent government contractor, it enjoys the same First Amendment protections as a government employee.  In Board of County

Commissioners v. Umbehr, 518 U.S. 668, 673-74, 116 S. Ct. 2342, 2346, 135 L. Ed. 2d 843 (1996), the Supreme Court "considered whether, and to what extent, the First Amendment restricts the freedom of federal, state, or local governments to terminate their relationships with independent contractors because of the contractors' speech." There, the plaintiff, an independent government contractor, alleged that the board of county commissioners terminated his trash hauling contract in retaliation for his public criticism of the county and the board. The Court held that there was no "difference of constitutional magnitude between independent contractors and employees in this context," id. at 684, 116 S. Ct. at 2352 (internal quotation marks and citation omitted), and "extended the existing framework for government employee retaliation to independent contractors, thereby blotting out any meaningful distinction between the two for First Amendment retaliation purposes," Golodner v. Berliner, 770 F.3d 196, 207 (2d Cir. 2014) (citing Umbehr, 514 U.S. at 677-85, 116 S. Ct. at 2348-52). That framework, known as the Pickering balancing approach, calls for a "balance between the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." Pickering, 391 U.S. at 568, 88 S. Ct. at 1734-35.

In a companion case issued that same day, O'Hare Truck Serv., Inc. v. City of Northlake, 518 U.S. 712, 714, 116 S. Ct. 2353, 2355, 135 L. Ed. 2d 874 (1996), the Supreme Court also decided whether independent contractors are protected from termination based on their "political association or the expression of political allegiance." There, the plaintiff, a towing company, was removed from the city's rotation list of available towing companies, allegedly for refusing to contribute to the mayor's reelection campaign and instead supporting the campaign of the mayor's opponent. The Court held that the protections of its prior political affiliation cases, Elrod and Branti, extended to cases "where government retaliates against a contractor . . . for the exercises of rights of political association or the expression of political allegiance." Id. at 714-15, 116 S. Ct. at 2355.

However, the O'Hare Court did not answer whether the plaintiff's claim should be governed by the Pickering balancing approach, which applies to speech, or the less detailed inquiry required by the Elrod/Branti line of cases, which simply asks whether "political affiliation is a reasonably appropriate requirement for the job in question." Id. at 714, 116 S. Ct. at 2355. Instead, the Court observed that the Pickering balancing approach might be preferred in cases brought by independent contractors because it "allow[s] the courts to consider the

necessity of according to the government the discretion it requires in the administration and awarding of contracts over the whole range of public works and the delivery of governmental services." Id. at 719-20, 116 S. Ct. at 2358. The Court also observed that the Pickering approach would accommodate cases "where specific instances of . . . speech or expression . . . are intermixed with a political affiliation requirement." Id. at 719, 116 S. Ct. at 2358.

Here, based on its memorandum of law, Dejana appears to contend that this is an affiliation case. (See Pl.'s Br. at 7 ("Unquestionably, 'political affiliation or support' constitutes conduct that is constitutionally protected.") However, there is evidence in the record that Dejana campaigned on behalf of Mayor Giunta's opponents, which could be reasonably construed as speech. (See Peter Dejana 50-h Tr. at 27-28:24.) Accordingly, the Court finds that the Pickering balancing approach is appropriate here because this case involves speech intermixed with political affiliation and "because of the interests involved in governmental contracting." Savoy of Newburgh, Inc. v. City of Newburgh, 657 F. Supp. 2d 437, 444-45 (S.D.N.Y. 2009) (applying the Pickering balancing approach because there was "evidence suggest[ing] that any retaliation . . . was a product both of [political] affiliation and . . . support for specific candidates").

Before the balancing test is reached, however, an independent contractor asserting a First Amendment retaliation claim under Section 1983 must "show that the termination of his contract was motivated by his speech on a matter of public concern, an initial showing that requires him to prove more than the mere fact that he criticized the [defendants] before they terminated him." Umbehr, 518 U.S. at 685, 116 S. Ct. at 2352; see also Safepath Sys. LLC v. N.Y. City Dep't of Educ., 563 F. App'x 851, 856 (2d Cir. 2014) (summary order) ("To make out a First Amendment retaliation claim, [an independent contractor] must demonstrate that (1) his speech addressed a matter of public concern, (2) he suffered an adverse employment action, and (3) a causal connection existed between the speech and the adverse employment action, so that it can be said that his speech was a motivating factor in the determination." (internal quotation marks and citation omitted)). If the plaintiff makes out a prima facie case, the defendant "will have a valid defense if it can show, by a preponderance of the evidence, that, in light of [its] knowledge, perceptions, and policies at the time of the termination, [it] would have terminated the contract regardless of [the independent contractor's] speech." Umbehr, 518 U.S. at 685, 116 S. Ct. at 2352; accord Savoy, 657 F. Supp. 2d at 445 ("If a plaintiff establishes [a prima facie case], the defendant has the opportunity to show by a preponderance of the evidence that it would have taken the same adverse action even

in the absence of the protected conduct." (internal quotation marks and citation omitted)).

B.  <u>Application</u>

Here, Defendants do not dispute that the conduct at issue--<u>i.e.</u>, Dejana's right to affiliate with or campaign on behalf of Mayor Giunta's opponents--is protected by the First Amendment. However, as a threshold matter, Defendants argue that Dejana's claim fails as a matter of law because "[b]reach of contract alone is not a protected property interest that would give rise to a constitutional claim." (Defs.' Opp. Br. at 1.)  This argument is easily dismissed.   Under the "unconstitutional conditions" doctrine, the government "'may not deny a benefit to a person on a basis that infringes his constitutionally protected . . . freedom of speech' even if he has no entitlement to that benefit." <u>Umbehr</u>, 518 U.S. at 674, 116 S. Ct. at 2347 (ellipsis in original) (quoting <u>Perry v. Sindermann</u>, 408 U.S. 593, 597, 92 S. Ct. 2694, 2697, 33 L. Ed. 2d 570 (1972)); <u>accord</u> <u>Safepath</u>, 563 F. App'x 851 at 856-57 (applying "unconstitutional conditions" doctrine to First Amendment retaliation claim brought by independent contractor). Thus, Dejana may assert a First Amendment retaliation claim based on the termination of its contract.

Nonetheless, Dejana's motion for summary judgment must be denied because Defendants have raised triable issues of fact with respect to Defendants' motive for terminating Dejana's

contract. Specifically, Mayor Giunta claims in her affidavit that the Village terminated Dejana's contract not because of its support for her political opponents, but because Dejana dumped raw sewage into Manhasset Bay and because the Village was not satisfied with Dejana's performance under the contract. (See generally Giunta Aff.) To be sure, Dejana has presented a significant amount of circumstantial evidence in its favor, and it is peculiar that the Village's July 27, 2012 termination notice did not cite Dejana's allegedly inadequate performance or dumping of raw sewage as grounds for termination.[5] Even more suspicious is that the Village

---

[5] In their opposition brief, Defendants appear to request summary judgment on Dejana's First Amendment claim. (See, e.g., Defs.' Opp. Br. at 3 ("Plaintiff's claims for violation of its freedom of association should be dismissed.") Defendants have not filed a formal motion for summary judgment. However, the failure to file a formal motion does not, in and of itself, prevent the Court from rendering summary judgment in Defendants' favor:

> Moving for summary judgment is not without its risks to the moving party. A motion for summary judgment searches the record, and it is well settled that if such a search reveals that there are no genuine issues of material fact, but that the law is on the side of the non-moving party, then summary judgment may be rendered in favor of the opposing party even though he has made no formal cross-motion under Rule 56.

Montgomery v. Scott, 802 F. Supp. 930, 935 (W.D.N.Y. 1992) (internal quotation marks and citations omitted) (emphasis in original). The Court has considered whether summary judgment against Dejana is appropriate. It is not. Dejana has produced more than enough evidence to support a jury verdict in its favor.

advised Dejana that it was terminating the contract so that it could bring the sewer cleaning service in house, but less than a year later, it retained Port Plumbing, an independent contractor whose president contributed to Mayor Giunta's campaign. These facts, as well as Dejana's other evidence, renders Mayor Giunta's testimony somewhat unbelievable. However, on a motion for summary judgment, the Court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." Amnesty Am. v. Town of W. Hartford, 361 F.3d 113, 122 (2d Cir. 2004) (internal quotation marks and citation omitted). Based on Mayor Giunta's testimony, a reasonable juror could find that the termination of Dejana's contract was not based on its support of Mayor Giunta's opponents. Accordingly, Dejana's motion for summary judgment on its First Amendment retaliation claim is DENIED.

III. Breach of Contract

Dejana also asserts a breach of contract claim against the Village for terminating the sewer cleaning contract. Dejana argues that summary judgment on this claim is warranted because it did not violate the contract, and therefore, did not trigger the contract's termination provision. (Pl.'s Br. at 14-15.) Dejana alternatively argues that, even if it did violate the contract,

23

the Village failed to provide Dejana with proper notice and an opportunity to cure, thus rendering the Village's termination notice invalid. (Pl.'s Br. at 14-15.) As discussed below, Dejana has not demonstrated an absence of disputed issues of fact with respect to whether it violated the contract. Moreover, the Court also finds that the contract is ambiguous regarding whether the Village was obliged to provide Dejana with an opportunity to cure its alleged violations, thus precluding summary judgment in Dejana's favor.

A.    Legal Standard

"The primary objective in contract interpretation is to give effect to the intent of the contracting parties 'as revealed by the language they chose to use.'" Sayers v. Rochester Tel. Corp. Supplemental Mgmt. Pension Plan, 7 F.3d 1091, 1094 (2d Cir. 1993) (quoting Seiden Assocs. v. ANC Holdings, Inc., 959 F.2d 425, 428 (2d Cir. 1992)). "The proper interpretation of an unambiguous contract is a question of law for the court, and a dispute on such an issue may properly be resolved by summary judgment." Omni Quartz, Ltd. v. CVS Corp., 287 F.3d 61, 64 (2d Cir. 2002). "However, when the meaning of the contract is ambiguous and the intent of the parties becomes a matter of inquiry, a question of fact is presented which cannot be resolved on a motion for summary judgment." LaSalle Bank Nat. Ass'n v. Nomura Asset Capital Corp.,

424 F.3d 195, 205 (2d Cir. 2005) (internal quotation marks and citation omitted).

     "Contract language is ambiguous if it is capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." Sayers, 7 F.3d at 1095 (internal quotation marks and citation omitted). On the other hand, "[n]o ambiguity exists when contract language has a definite and precise meaning, unattended by danger of misconception in the purport of the [contract] itself, and concerning which there is no reasonable basis for a difference of opinion." Id. (second alteration in original) (internal quotation marks and citation omitted). "Whether a contractual provision is ambiguous is a threshold question of law to be determined by the court. If a court determines that a contractual provision is ambiguous, the court may accept any available extrinsic evidence to ascertain the meaning intended by the parties during the formation of the contract." Sea Tow Servs. Int'l, Inc. v. Pontin, 607 F. Supp. 2d 378, 386 (E.D.N.Y. 2009) (internal quotation marks and citation omitted).

B.  <u>Application</u>

Section 22 of the contract sets forth the circumstances under which the Village may terminate the contract.  It states, in relevant part:

> The Village shall have the right, at its sole option, . . . to terminate this Agreement by notice upon the occurrence of any of the following events without any further or other obligation on the part of the Village.
>
> a)  any breach of the agreements, warranties, representations or covenants made by [Dejana];
>
> . . .
>
> c)  [Dejana's] continuing, repeated or willful failure or refusal to perform the services contracted for in a proper manner in accordance with the terms and provisions of [the contract] provided, however, that [Dejana] shall have first received written notice from the Village advising [Dejana] of the specific acts or omissions alleged to constitute a failure to perform the services contracted for in a proper manner and such failure or refusal continues after [Dejana] shall have had five (5) days to correct the acts or omissions giving rise to the complaint of such failure or refusal or, having corrected such acts or omissions, identical or substantially similar acts or omissions are committed by [Dejana].

(Sewer Cleaning Contract § 22.)

As an initial matter, Dejana first argues that summary judgment in its favor is warranted because "the record is devoid of any suggestion, let alone evidence, that Dejana failed 'to

perform services contracted for in a proper manner.'" (Pl.'s Br.
at 15 (capitalization omitted) (quoting Sewer Cleaning Contract
§ 22).) In other words, because it did not violate the contract,
Dejana contends, the Village had no right to terminate the contract
pursuant to the termination provision. However, there is evidence
in the record to support a reasonable juror's conclusion that
Dejana breached and/or failed "to perform the services contracted
for in a proper manner," as required under section 22(c) of the
contract. As noted, Mayor Giunta claims that Dejana dumped raw
sewage into Manhasset Bay[6] and failed to "properly maintain[ ]"
the sewer lines, "as evidenced by an unacceptable number of
emergency responses for grease buildup in the sewer lines in a 0.6
mile radius."[7] (Giunta Aff. ¶¶ 5, 7.) Moreover, Port Plumbing
president claims in his affidavit that his inspection of the
Village's sewer lines led him to believe that certain portions of

---

[6] Section 14 of the contract requires Dejana to comply with the
Clean Water Act and section 15 states that Dejana "shall conform
to all applicable governmental laws and regulations . . . ."
(Sewer Cleaning Contract §§ 14-15.) Dejana does not dispute
Defendants' contention that dumping raw sewage into Manhasset
Bay is illegal; it simply disputes that it ever dumped raw
sewage.

[7] Mayor Giunta also alleges that Dejana violated the contract
because it "was not performing proper maintenance services to
the Manorhaven pump station." (Giunta Aff. ¶ 9.) However, the
contract lists the specific locations Dejana was required to
service and/or clean and the Manorhaven pump station is not one
of them. Thus, this allegation may not serve as a basis for the
Village's contention that Dejana breached the contract.

the sewer system "had been neglected" or "had not been serviced or cleaned" for many years.  (Blasucci Aff. ¶¶ 5, 7.)

Having concluded that there are issues of fact as to whether Dejana violated the contract, the Court must decide whether the Village complied with the contract's termination provision. There is no dispute that the Village failed to give Dejana notice and opportunity to cure its alleged violations of the contract. However, the termination provision is ambiguous as to whether the Village was obligated to provide an opportunity to cure. Subsection (c) of the termination provision states that a termination of the contract is effective only if the Village first provides a five-day opportunity to cure the "acts or omissions giving rise to [a] complaint of [a] failure or refusal" "to perform the services contracted for in a proper manner in accordance with the terms and provision of [the contract]."  (Sewer Cleaning Contract § 22(c).)  However, subsection (a) of termination provision states that the Village may terminate the contract by simply giving "notice upon the occurrence of . . . any breach of the agreements, warranties, representations or covenants made by [Dejana]."  (Sewer Cleaning Contract § 22(a).)  In contrast to subsection (c), subsection (a) does not require an opportunity to cure.  Dejana's alleged violations of the contract can be reasonably construed as "breach[es]" under subsection (a) or "failure[s] to perform the services contracted for in a proper

manner in accordance with the terms and provision of [the contract]." Thus, the termination provision is ambiguous as applied to the facts of this case, and neither side has presented extrinsic evidence to resolve this issue. Accordingly, Dejana's motion for summary judgment on its breach of contract claim is DENIED.

CONCLUSION

For the foregoing reasons, Dejana's motion for summary judgment (Docket Entry 20) is DENIED.


SO ORDERED.


/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:    March __18__, 2015
          Central Islip, New York